[No. 27484-8-I.   Division One.   April 27, 1992.]

SHAWN K. MCDANIEL, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*

*Steve Paul Moen* and *Shafer, Moen & Bryan, P.S.,* for appellant.

*Kenneth Hobbs* and *Stafford Frey Cooper & Stewart,* for respondent.

AGID, J. — Shawn K. McDaniel brought a civil action for damages against the City of Seattle (the City) arising out of his arrest by Seattle police officers on February 26, 1988. McDaniel appeals the trial court's ruling that evidence illegally obtained and suppressed in his criminal trial was admissible in his civil trial. He also contends that the trial court erred in dismissing his claim for malicious prosecution. We affirm.

## I
### FACTS

On February 26, 1988, Seattle police officers responded to a reported armed fight involving a "black, Mexican and a white", taking place outside of an apartment building which McDaniel managed. Officer Jack Lone testified that he saw a "fat" white male standing across the street from the location described by the telephone complainant. The officer saw the white male make a motion with his hands, which he interpreted as closing a folding-blade knife. Officer Ed Casey testified that someone yelled out to the man to stop, but that he turned and ran into the building. Several officers ran into the building in pursuit of the "suspect". Officer Lone told them he thought the suspect had a knife. As the officers approached the building, a Hispanic male slouched near the entrance said, " 'watch him, he's got a knife.' "

Officer Landy Black went up to the third floor, where he saw a heavyset white male who was later identified as McDaniel. McDaniel was standing in the doorway of a hall storage closet, his body partially obstructed by the open door. When McDaniel saw the approaching officer, he "made a motion inside the closet, as if picking up or setting down an object". He then came out of the closet, slammed the door, and attempted to get by Officer Black. Officer Black testified that, because McDaniel had his right hand in his front pocket, Officer Black feared that McDaniel might be reaching for a weapon. When Officer Black ordered McDaniel to stop and take his hand out of his pocket, McDaniel refused to obey. Officer Black grabbed McDaniel's arms and "propelled" him against the hallway wall in a "classic frisk position". McDaniel broke free and continued running down the hall. Officer Casey came toward McDaniel from the other direction, and together with other officers, handcuffed and arrested him. After the arrest, Officer Black went into the storeroom and removed a knife he found inside.

McDaniel's witnesses testified that when McDaniel saw one of his tenants, Juan Salinas, being assaulted by a black man, McDaniel attempted to help Salinas. The black man threatened McDaniel, who went back into the apartment building to contact the police. McDaniel claimed that he went into the storeroom to look for a bat or something with which to defend himself if the black man confronted him again. At that point, McDaniel saw the police officer coming down the hall. According to McDaniel, he ran toward the officer, yelling, "Help . . . fight down on the street!", but the officer suddenly grabbed him and slammed his body onto the concrete floor.

McDaniel was charged with the municipal crimes of obstructing a public officer, resisting arrest, and unlawful use of a weapon. Prior to his criminal trial, the trial judge determined that the police had obtained the knife illegally through a warrantless search and suppressed evidence of the knife. The City accordingly dismissed the weapons charge. The jury acquitted McDaniel of the other charges.

Subsequently, McDaniel filed a civil complaint against the City setting forth numerous claims, including assault, false arrest, false imprisonment, and malicious prosecution. McDaniel moved in limine to exclude evidence of the knife on the ground that it was the fruit of an illegal search and seizure. He argued that the exclusionary rule should be applied in civil as well as criminal trials. Because the issue of the legality of the search and seizure was decided at his criminal trial, he asserted that the City was collaterally estopped from relitigating the issue in the civil trial. The trial court disagreed with the first contention and allowed the City to introduce the knife into evidence.

Before trial, the City moved to dismiss several of McDaniel's causes of action. Among the claims dismissed by the trial court was McDaniel's claim for malicious prosecution. The jury returned a verdict in favor of the City on each cause of action submitted to it. McDaniel's appeal followed.

## II
### APPLICABILITY OF EXCLUSIONARY RULE IN CIVIL ACTION

McDaniel contends that the trial court erred in refusing to apply the exclusionary rule to suppress evidence harmful to his case and relevant to the defense theory in his civil action for damages against the City. He further contends that, if the evidence should have been suppressed, the City was collaterally estopped in the civil trial from relitigating the issue of whether the evidence was illegally seized in violation of McDaniel's Fourth Amendment rights. Because we hold that the trial court properly ruled that the exclusionary rule could not be applied to exclude relevant and highly probative evidence in McDaniel's civil trial, like the trial court, we do not reach the collateral estoppel issue.

The issue presented here is one of first impression in Washington. Evidence obtained by means of an illegal search and seizure conducted in violation of the Fourth Amendment is not admissible in a civil proceeding that is quasi-criminal in nature. *E.g., One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 14 L. Ed. 2d 170, 85 S. Ct. 1246 (1965) (forfeiture action). Such evidence has also been held

inadmissible in cases in which the government is seeking to exact a penalty from, or in some way punish, the person against whom the evidence is sought to be admitted. *E.g.*, *Pizzarello v. United States*, 408 F.2d 579 (2d Cir.) (tax assessment on money illegally seized by the government), *cert. denied*, 396 U.S. 986 (1969); *Powell v. Zuckert*, 366 F.2d 634 (D.C. Cir. 1966) (discharge proceeding against an Air Force civilian employee). *Contra, Governing Bd. of the Mt. View Sch. Dist. v. Metcalf*, 36 Cal. App. 3d 546, 111 Cal. Rptr. 724 (1974) (proceeding to dismiss probationary public school teacher).

In *United States v. Janis*, 428 U.S. 433, 49 L. Ed. 2d 1046, 96 S. Ct. 3021 (1976), the Supreme Court held that the federal government could introduce evidence illegally seized from the plaintiff by *state* police officers in a civil federal tax proceeding. In reaching its decision, the Court focused on whether deterring future police misconduct, the exclusionary rule's primary purpose, would be served by excluding evidence seized by a governmental entity different from the sovereign seeking to use it in the civil proceeding. The Court determined that the additional deterrent effect of excluding the evidence in the civil proceeding was only marginal, and that the cost to society of extending the rule to that situation outweighed any deterrence benefit. *Janis*, 428 U.S. at 453-54.

Cases from other jurisdictions involving facts similar to those presented here provide guidance as well. *Jonas v. Atlanta*, 647 F.2d 580 (5th Cir. 1981); *Herndon v. Ithaca*, 43 A.D.2d 634, 349 N.Y.S.2d 227 (1973). In *Herndon*, the court ruled that illegally seized evidence was admissible in a civil suit seeking damages. There, the plaintiff sued the City of Ithaca for injuries sustained as a result of being shot by a city police officer. The officer believed he saw Herndon stealing money from a cigarette machine. He approached Herndon and asked him to empty his pockets. According to the officer, Herndon began to remove some coins from his pocket, and then struck the officer and ran off. The officer

caught up with him and a struggle ensued, during which Herndon was shot in the neck with the officer's gun.

During the civil trial for damages, the City of Ithaca introduced evidence that Herndon had $4.75 in change on his person at the time of his arrest. The evidence had been obtained through an illegal search of Herndon's clothing at the hospital, and was therefore suppressed in the prior criminal proceeding. *Herndon*, 43 A.D.2d at 635. In analyzing whether the evidence should have been excluded in the civil proceeding, the court first noted that the damages action was not a quasi-criminal proceeding where the goal was to punish Herndon or retain his property. Rather, the court emphasized, it was Herndon who was raising the issue of whether he had committed a crime. Under those circumstances, the court concluded that:

> When a person affirmatively offers testimony that he did not commit a crime, he opens the door for use of rebutting evidence even though it was illegally obtained. In civil cases which are not quasi-criminal, or in which penalties or forfeitures are not sought, evidence illegally obtained is admissible when the party seeking to exclude the evidence, has made an affirmative claim for relief against the governmental body.

(Citations omitted.) *Herndon*, 43 A.D.2d at 635-36. The court relied in part on *Walder v. United States*, 347 U.S. 62, 98 L. Ed. 503, 74 S. Ct. 354 (1954), in which the Supreme Court stated:

> It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths.

*Herndon*, 43 A.D.2d at 636 (quoting *Walder*, 347 U.S. at 65).

In *Jonas*, 647 F.2d at 580, the court permitted the State to introduce illegally seized evidence on the ground that its exclusion would not further the purpose of the exclusionary rule. There, a mother and son (Samuel) brought a civil rights action alleging, *inter alia,* that city police officers illegally searched, seized and arrested the son, that one of

the officers beat the son with a flashlight, and that the son was maliciously prosecuted. At trial, the court ruled that the City of Atlanta could present evidence of contraband found in the Jonas automobile and on Samuel's person. In determining whether the evidence should have been excluded, the appellate court assumed that the seizure of the contraband violated Samuel's Fourth Amendment rights. The court analyzed whether the deterrent purpose of the exclusionary rule would be furthered by excluding the evidence in Samuel's civil case for damages. It concluded:

> If an illegal search and seizure did occur in the instant case, we feel that the desired deterrent effect has been achieved by the suppression of that evidence in state criminal proceedings. The criminal enforcement process, which is the concern and duty of defendants, has been thwarted. Given the deterrence obtained by, in effect, precluding criminal prosecution, we think that the additional marginal deterrence provided in this case by disallowing the use of the evidence at this civil trial would not outweigh the societal cost of excluding relevant evidence and decreasing the possibility of obtaining accurate factual findings.

(Footnote omitted.) *Jonas*, 647 F.2d at 588.

■ As in *Herndon* and *Jonas*, McDaniel asks this court to hold that evidence illegally obtained by police is inadmissible in an action in which he seeks affirmative relief from the City. We are persuaded by the courts' reasoning in those cases that two policy considerations dictate against extending the exclusionary rule to civil suits that are not quasi-criminal in nature and that do not seek to exact a penalty or forfeiture.

First, as the *Herndon* court concluded, it is fundamentally unfair to allow a plaintiff seeking affirmative relief from the City to use the exclusionary rule to exclude probative evidence which tends to disprove his claim that the police lacked probable cause to arrest him on the criminal charge. We cannot permit the plaintiff to conceal highly probative evidence under the guise of the protection of a rule which was intended to deter unlawful police conduct. The City in this case should be allowed to introduce evidence relevant to rebut McDaniel's claim that the police lacked probable cause to arrest him. Because the officers here pursued McDaniel on the suspicion that he was armed

with a knife and might be involved in the reported assault, evidence that a knife was found in the storeroom where the officer confronted McDaniel was highly probative and relevant to show that there was probable cause for the subsequent actions of the officer on which McDaniel based his claim for damages.

Second, we agree with the *Jonas* court that the additional deterrent effect provided by the exclusion of evidence already suppressed in the civil plaintiff's criminal trial is marginal. That effect has already been achieved through dismissal of and acquittal on the criminal charges. Any additional deterrent effect is outweighed by the perversion of the fact-finding process that would result from excluding evidence of the knife. We conclude that the trial court properly admitted the evidence.[1]

## III

### DISMISSAL OF MALICIOUS PROSECUTION CLAIM

McDaniel also challenges the trial court's dismissal of his malicious prosecution claim. To state a claim upon which relief can be granted for malicious prosecution, the plaintiff must allege the following:

> (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the

---

[1] *Tanuvasa v. City & Cy. of Honolulu*, 2 Hawaii App. 102, 626 P.2d 1175 (1981), upon which McDaniel relies, is readily distinguishable. Here, the officers pursued McDaniel on the basis of witness reports that he had a knife and might be involved in the reported assault. In *Tanuvasa*, by contrast, the officers ordered the plaintiff up against the wall despite the fact that they had no reason to believe he had engaged in illegal activity. The officer's later discovery of a gun and marijuana in the plaintiff's car had absolutely no relevance to whether he had reason to believe the plaintiff had committed any crime. They were not found until after the officer had already beaten the plaintiff. Further, the trial court excluded the evidence based on its lack of relevance and highly prejudicial nature, and the appellate court affirmed on those grounds. Not only was the appellate court's ruling that the exclusionary rule should be applied in civil cases dicta, but the cases relied upon by the court for that proposition were either quasi-criminal or suits to exact a penalty from the defendant. As we stated above, our holding does not apply to such cases.

merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 497, 125 P.2d 681 (1942); *Bender v. Seattle*, 99 Wn.2d 582, 593, 664 P.2d 492 (1983). Of these elements, malice and probable cause are the core of the action. *Bender*, 99 Wn.2d at 593. When there is conflicting testimony as to whether the police had probable cause to arrest or acted with malice, a factual issue exists and the plaintiff is entitled to have his claim put before the jury. *Bender*, 99 Wn.2d at 594; *see Peasley*, 13 Wn.2d at 502-03.

The trial court ruled that McDaniel's claim of malicious prosecution failed as a matter of law because, even assuming the police acted with malice, the prosecutor's discretionary decision whether or not to charge McDaniel broke the chain of causation. The court further concluded that prosecutorial immunity from a claim of malicious prosecution insulated the City from liability. *See Creelman v. Svenning*, 67 Wn.2d 882, 884, 410 P.2d 606 (1966). As the employer of the police officers allegedly responsible for maliciously prosecuting McDaniel, the City is not immune from liability. *Bender*, 99 Wn.2d at 589-90. The trial court therefore erred in determining that prosecutorial immunity insulated the City from liability.[2] Further, the account given by McDaniel's witnesses, when contrasted with the account of the incident described in the police report, created a factual issue as to whether the reporting officer made a full and truthful disclosure of the events leading up to McDaniel's arrest. The jury was therefore entitled to make the determination of which version of the facts was more credible.[3]

---

[2]The trial court's other ruling, that the prosecutor's discretion in deciding whether to prosecute broke the chain of causation, was also erroneous because the City's liability for its police officers' malicious actions is independent of the acts of its prosecutors. *See Coffel v. Clallam Cy.*, 47 Wn. App. 397, 404, 735 P.2d 686, *review denied*, 108 Wn.2d 1024 (1987).

[3]We reject McDaniel's argument, however, that the trial court should have admitted the police report into evidence. Since the evidence contained in the

■ While the trial court based its dismissal of McDaniel's claim on an erroneous legal conclusion, this court can affirm on another ground so long as it is established by the pleadings and supported by the proof. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027, *cert. denied*, 493 U.S. 814 (1989). The City argues that, even if the trial court erred in dismissing McDaniel's claim, the error was harmless in view of the jury's finding that the police had probable cause to arrest him. This finding, the City contends, is inherent in the jury's verdict in favor of the City on McDaniel's false arrest and assault claims. We agree.

■ The trial court instructed the jury that, in order to find that the plaintiff had been falsely arrested, it must conclude that the plaintiff proved three elements: (1) that the police arrested plaintiff; (2) that the arrest was made without probable cause; and (3) that the unlawful arrest proximately caused plaintiff's damages. Of the three elements, the only one contested was probable cause. Since the jury found against McDaniel on this issue, the only possible interpretation of the verdict is that the jury found that the officers had probable cause to arrest McDaniel. Because McDaniel must prove that they did not have probable cause for an arrest in order to prevail on his malicious prosecution claim, it would be futile to send this case back for another trial on that claim. The jury has already resolved that claim against him. Accordingly, we conclude that the trial court's error was harmless.

The judgment is affirmed.

GROSSE, C.J., and BAKER, J., concur.

Reconsideration denied July 17, 1992.

Review denied at 120 Wn.2d 1020 (1993).

---

report was presented through the officers who testified at trial, introduction of the report itself would have been merely cumulative, and it was properly excluded. *State v. Thamert*, 45 Wn. App. 143, 148, 723 P.2d 1204, *review denied*, 107 Wn.2d 1014 (1986).