## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

CITY OF JACKSON,          )
          )
       Plaintiff/Appellee,    ) **Madison Circuit No. 97-727**
          )
**VS.**          ) **Appeal No. 02A01-9812-CV-00381**
          )
**JEFF BUTLER,**          )
          )
       Defendant/Appellant.   )

**FILED**

July 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

## APPEAL FROM THE CIRCUIT COURT OF MADISON COUNTY
## AT JACKSON, TENNESSEE
## THE HONORABLE FRANKLIN MURCHISON, JUDGE

**JEFFREY BUTLER, pro se**
Jackson, Tennessee
Attorney for Appellant

**C. MARK DONAHOE**
**SPRAGINS, BARNETT, COBB & BUTLER, PLC**
Jackson, Tennessee
Attorney for Appellee

**AFFIRMED IN PART, REVERSED IN PART
AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Jeffrey Butler ("Butler" or "Appellant") appeals from the trial court's order finding that

Butler was in violation of the health and sanitation code of the City of Jackson ("City" or "Appellee").

## I. Factual and Procedural History

After receiving complaints about the premises at 126 Wilkinson in Jackson, Tennessee, the Health and Sanitation Department of the City of Jackson ("City" or "Appellee") instituted an investigation at that address in July of 1997.

On July 16, 1997, pursuant to Jackson City Code section 13-105, a letter issued from Code Enforcement Officer Rickey Brown to the Appellant, notifying him that he was in violation of the Official Code of the City of Jackson sections 13-103, 13-104, 13-105, and 17-105. When Butler failed to take any action, two citations were issued. The first citation, issued July 31, 1997, charged Butler with violating City Code 13-202. The second citation, issued August 1, 1997, charged Butler with violating City Code sections 13-103, 13-104, 13-105, and 17-105.

Code Enforcement Officer Rickey Brown based the citations on his observation of weeds, vines, stacks of wood, metal parts, automotive parts, motors, automobiles, scattered papers and debris located in the front and back yards of Butler's residence. Brown returned in August of 1997 and on September 15, 1997, and found the property in the same condition. Accompanying him on September 15 was the Jackson-Madison County Environmental Program Director and Superintendent of the City of Jackson Health and Sanitation Department, Brent Lewis. Lewis observed the property in the same condition and a videotape and photographs were made at that time and later submitted into evidence. Officer Jerry West observed the same violations, and additionally junk cars, and caused the citations for the cars to issue.

On August 18, 1997, Butler responded to the summons at the City of Jackson City Court. Thereafter a trial ensued, resulting in a judgment against Butler in the amount of

2

$250.00. Butler appealed the matter to circuit court.

On May 8, 1998, the circuit court conducted a de novo hearing. The trial court found Butler to be in violation of City Code sections 13-103, 13-104, 13-105, 13-202 and 17-105 and imposed a fine of $250.00. The trial court found that there had been some clean up of the yard since the citations were issued. Accordingly, the trial court ordered the city to send Butler a new letter informing him of what must be done to bring the property up to code. The trial court further held that Butler would then have fifteen (15) days to comply. If Butler did not comply, the City would be allowed to clean up the yard at the expense of Butler. It is from that decision that Butler appeals to this Court.

## II. Warrantless Search

Butler's first contention on appeal is that the administrative search of his residence was warrantless and in violation of Butler's Fourth Amendment rights. Butler bases this on testimony by Brent Lewis that, in order to view the condition of Butler's yard, Rickey Brown, Code Enforcement Officer, and Lewis had to climb onto the back of a truck bed and look over the fence into the yard. Butler argues that the code officer first should have obtained a search warrant for this administrative search. Butler contends that the warrantless search renders all of the evidence upon which the citations were based, fruit of the poisonous tree, and such evidence should have been suppressed by the trial court.

The City counters that violations of municipal ordinances are considered a civil and not a criminal proceeding. While not explicitly stated by the City, the implication is that the exclusionary rule does not apply in civil matters.

It is true that cases involving violation of city ordinances are not criminal prosecutions. Such cases are civil in nature having as their object the vindication of domestic regulations. City of Chattanooga v. Meyers, 787 S.W.2d 921, 922 (Tenn. 1990) (*citing* Briggs v. City of Union City, 531 S.W.2d 106, 107 (Tenn. 1975)). Such cases are

3

governed by rules in civil cases. Meyers at 922 (*citing* Metropolitan Government v. Allen, 529 S.W.2d 699, 707 (Tenn. 1975)).

While it has been held that the exclusionary rule generally does not apply to a civil proceeding, it is usually held that the rule applies to a civil proceeding which is quasi-criminal in nature, or in which the government is seeking to exact a penalty or in some way punish a person. 31A C.J.S. Evidence §253 (1996). *See also* Adamson v. C.I.R., 745 F.2d 541 (1984); Vander Linden v. U.S., 502 F.Supp. 693 (1980); McDaniel v. City of Seattle, 828 P.2d 81 (1992); U.S. v. Moddes, Inc., 787 F.Supp. 1466 (1992). Therefore, the exclusionary rule may be available to suppress illegally obtained evidence in a ordinance violation hearing.

However, we expressly decline to address whether the search violated Butler's rights as Butler made no objection to the admissibility of the evidence at the trial court, nor did he file any prior motion to suppress the evidence nor a motion in limine to prevent the evidence from being admitted. While we grant Butler some leeway as a pro se litigant, the job of the Court of Appeals is to address any errors made at the trial court below. This issue was neither raised nor considered in the trial court, and cannot be raised for the first time on appeal. T.R.A.P. 36; Simpson v. Frontier Community Credit Union, 810 S.W.2d 147 (Tenn. 1991).

### III. Penalty Imposed

The trial court ordered Butler to pay a fine of $250.00 for the violations of the city ordinances. Additionally, the trial court ordered Butler to bring his residence into compliance with the Code, with the condition that if he was not in compliance within fifteen (15) days, the City would clean up the yard at Butler's expense, plus a twenty-five percent surcharge as authorized by section 13-105. The trial court issued the fine under the general penalty provision of the Code. The general penalty provision provides in pertinent part:

4

Section 5. Penalty Clause. Wherever in the municipal code, including the codes and ordinances adopted by reference, any act is prohibited or is made or declared to be unlawful or an offense or a misdemeanor, or wherever in the municipal code the doing of any act is required or the failure to do any act is declared to be unlawful, the violation of any such provision of the municipal code shall be punishable by a penalty of not more that five hundred dollars ($500.00), where no specific penalty is otherwise provided, and costs for each separate violation . . .

_____The general penalty provision can be applied when the Code has been violated and no specific penalty is provided. Butler argues that section 13-105 sets forth a specific penalty and therefore it was error for the court to use the general penalty provision to impose a fine of $250.00. We do not agree.

City Code section 13-105 contains the "clean up" provision available to the City. This section authorizes the City to enter onto the premises of an offender and remove any accumulation of garbage, trash and rubbish, and cut all weeds if the offender does not clean up the premises within five (5) days of notice of the violation. The Code section states that the person in charge of the premises will be charged the actual cost of such removal plus a charge of twenty-five (25) percent. The Code also provides that such property shall be subject to a lien in favor of the City until all such charges are paid.

We do not believe that this is the type of "specific penalty" envisioned by the drafters which would preclude the application of the general penalty provision. Code section 13-105 is not designed to be a penalty, but rather allows the City to protect the health, safety, and welfare of its citizens by bringing property in compliance with the code when the offending party refuses to comply. The offending party is charged actual cost of removal to reimburse the City for the expense. While not stated in the Code, the twenty-five (25) percent addition to the charge may cover administrative expenses and/or may serve to deter property owners from using the City as their personal cleaning service.

Accordingly, we find that City Code section 13-105 is not a "specific penalty" for the purposes of the general penalty provision and that the trial court did not err in fining Butler

5

under the general penalty provision in addition to allowing clean up by the City in the event Butler fails to comply with the Code.

## IV. Specific Code Violations

The trial court found that Butler violated City Code sections 13-103, 13-104, 13-105, 13-202, and 17-105. Butler raises several issues concerning these various code sections including allegations that the City did not meet its burden of proof as to each Code violation. We shall therefore address each of these sections in turn.

## A. City Code section 13-103.

City Code section 13-103 makes it unlawful for any person to allow weeds or grass to grow to a height in excess of six (6) inches on property owned by or under the control of such person. Butler argues that the City violated the procedural rules set forth in section 13-105 and that Butler's due process rights were violated.[1]

City Code section 13-105 directs that whenever a person violates the provisions of sections 13-102, 13-103, or 13-107, the recorder shall mail to the person having control over the offending premises notice of the violation. The Code then sets forth the language that is to be included in the notice. In short, the notice informs the person that the premises have been found to be in an unsanitary, unhealthy and unclean condition, and directs the person to clean up the premises within the next five (5) days. The notice also informs the offending party that if he or she fails to act upon such directive, the City will enter onto the property and remove such garbage, etc, and charge the offending party the actual cost plus twenty-five (25) percent.

In contrast, the notice sent to Butler listed the specific code violations and stated

---

[1] Butler asserts that the City violated the procedural rules of section 13-105 and that said failure "constitutes an alteration of Municipal Code Section Titles 13 and 17 so as to deprive Appellant of substantive rights of notice and due process." However, section 13-105 only applies when a person violates the provisions of sections 13-102, 13-103, or 13-107. Of these sections, Butler was only charged with a violation of section 13-103. Therefore, we address this due process argument only as it relates to section 13-103.

as follows:

> The condition of property under your control violates "The Official Code of the City of Jackson, Tennessee". Property and code violations are listed above.
>
> Please consider this letter as legal notification to comply with applicable codes within five (5) working days. Failure to comply will force the City to pursue the legal remedies identified in the City Code.
>
> I thank you in advance for your cooperation in this matter.

Butler argues that the City's failure to send the notice required by section 13-105 violated his due process rights. We do not find that the City's failure to send the notice required under section 13-105 violated Butler's due process rights under the circumstances of this case.

The notice sent by the City to Butler was sufficient to place Butler on notice that he was in violation of the City Code. When Butler failed to comply with said Code provisions, the City issued a citation and Butler was afforded a hearing before any punitive measures were imposed. However, if Butler failed to comply with the notice which was sent, and the City chose instead to enter onto the property five days later and perform the clean up, this holding might have been different. Before the City may avail itself of the clean up remedy found in section 13-105, it should issue the notice mandated by that section to ensure the offending party is fully informed of the City's clean up procedure and the charges and consequences to the offending party of non-compliance.

Butler also asserts that the City did not meet its burden of proof as to this Code section as it did not prove that the property was "under the control" of Butler, as required by section 13-103. Upon a careful reading of the transcript, we find that the City did prove that the property was under Butler's control. Butler testified that he had the ability to say who comes and goes. When questioning Butler about a videotape which was played for the court, counsel for the City stated to Butler, "It's the yard where you live and you have control of the property, right? Butler responded, "That's kind of obvious, isn't it?" Taking into account that Butler was rather uncooperative in answering questions posed by counsel

7

for the City, we find the testimony of Butler sufficient to show he was in control of the property at issue.

For all of the above noted reasons, we hold that the trial court did not err in finding Butler to be in violation of City Code section 13-103.

**B. City Code section 13-104**

City Code section 13-104 makes it unlawful for any owner of record of real property to create, maintain, or permit to be maintained on such property the growth of trees, vines, grass, underbrush and/or the accumulation of debris, trash, litter, or garbage. In contrast to section 13-103 which applies to the property owner or the person in control of the property, section 13-104 applies only to the owner of record of the real property.

At trial, Butler testified that he resides at 126 Wilkinson but it is not his property. The City introduced no evidence that the Butler is the owner of record of this property, and made reference to the fact that his Wife is the owner of the property. Accordingly, as a matter of law, Butler could not violate section 13-104. We hold that the trial court erred in finding Butler in violation of City Code section 13-104.

**C. City Code section 13-105**

The trial court found Butler guilty of violating section 13-105. As mentioned hereinabove, section 13-105 is a remedial section which directs the City to send notice to the offending party, authorizes the City to make removal upon failure to comply with notice, and authorizes the city to place a lien on the property until all such charges are paid. Although this is the only section that speaks to the clean up of the premises, the Code section is not worded to make a failure to clean up a separately chargeable offense. Rather, it provides the remedy available to the City if the offending party refuses to clean up the premises.

The other Code sections found in Title 13 which Butler was charged with violating

8

begin with the language "It shall be unlawful for . . ." In contrast, section 13-105 (1) begins, "Whenever a person violates the provisions of sections 13-102, 13-103, or 13-107, the recorder shall mail . . ." Subsection (2) begins "On failure to comply with the notice as set out above . . .the city shall . . ." Subsection (3) begins, "Until all such charges prescribed by this section are paid . . ." Finally, subsection (4) begins, "The remedy contained in this section shall not be the exclusive remedy . . ."  We find that such language sets forth the remedy available to the city upon a violation of the code.

We believe City Code section 13-105 was enacted to authorize the City to enter onto such premises and bring them in compliance with the Code to ensure the health and safety of the community. Without such a statute, the City could fine the offending party, but would not be able to remedy the situation if the offending party refused to comply, thereby jeopardizing the health and safety of the community. City Code section 13-105 does not create a separately chargeable offense. Accordingly, we find that the trial court erred in finding Butler in violation of City Code section 13-105.

**D. City Code section 13-202**

Butler was charged with violation of City Code section 13-202 in a separate citation. The trial court found Butler to be in violation of this Code section. City Code section 13-202 makes it unlawful to park, store, or leave, or to permit the parking or storing of any licensed or unlicensed motor vehicle of any kind, for a period in excess of ten (10) days, when such vehicle is in a state of disrepair and incapable of moving under its own power upon any private property within the city, unless the same is completely enclosed within a building or unless it is in connection with a business enterprise operated in a lawful place and manner.

Butler argues that the citation issued by Officer Jerry West is on its face invalid since the City's cause of action could not have matured on the date of the citation, July 31, 1997. Butler contends that Officer West first investigated the matter on July 31, 1997. As section 13-202 refers to vehicles which have been parked, stored or left in excess of ten

days, the earliest possible date on which Officer West could have had the requisite knowledge of the violation was August 10, 1997.

City Code section 13-204 states that there should be reasonable grounds to believe that a violation of the chapter exists. It appears that reasonable grounds existed on July 31, 1997 for Officer West to believe Butler was in violation of section 13-202. Officer West testified that he investigated Butler's yard due to a vehicle complaint. He took photographs of eight vehicles parked in Butler's yard. He testified that when he observed the vehicles they appeared to have been sitting there a long time with trash piled on them. Officer West testified that in his opinion the vehicles were not in a state that would allow them to be functional and they were covered up with debris. Officer West also noted on the citation that he tried to contact Butler on different dates at least six times with no results in reference to the vehicles.

Once there are reasonable grounds to believe that a violation of the junked vehicles chapter of the Code exists, section 13-204 directs the chief of police to give, or cause to be given, written notice to the offending party that the motor vehicle violates the provisions of said chapter. The notice shall demand that the motor vehicle be removed to a place of lawful storage within ten (10) days and that failure to remove said vehicle and abate the nuisance shall constitute a violation of the provisions of the chapter. Officer West sent Butler such notice on August 1, 1997.

It appears to this Court that Officer West should have waited until August 10, 1997 to issue the citation. However, since Butler was afforded a hearing on the violation, it is not the date of issuance of the citation upon which this case turns, but rather the finding by the court that Butler was in violation of section 13-202. Had Butler complied with the notice and removed the vehicles within ten days of receiving notice, prior to his first court hearing, Butler could not have been found to be in violation of section 13-202 since it allows the offending party ten (10) days to abate said nuisance.

10

Butler contends that the aim of the Code provisions on junked vehicles is the placement of such vehicles in a manner so that they are not visible from the street. Butler cites section 13-203 for this proposition. City Code section 13-203 deals with the removal of the offending vehicle and states that the vehicle shall be removed to a place of lawful storage or housed within a building where it will not be visible from the street. Butler argues that since his vehicles were located within a fenced area, not visible from the street, such vehicles fall outside the intent of the ordinance.

Although section 13-203 contains language speaking to visibility from the street, we cannot ignore the language "housed within a building" found in section 13-203 and "completely enclosed within a building" found in section 13-202. City Code section 13-201 sets forth the purpose of the code section:

> 13-201. <u>Declaration of Purpose</u>. The Council finds and declares that the accumulation and storage of motor vehicles in a state of disrepair and incapable of moving under their own power are in the nature of rubbish and unsightly debris, and constitute a nuisance detrimental to the health, safety, and welfare of the community in that such conditions tend to interfere with the enjoyment of and reduce the value of private property; create safety and health hazards to minors as well as adults, interfere with the comfort and well being of the public and create, extend, and aggravate urban blight, and that the public health, safety, and general welfare require that such conditions be regulated, abated, and prohibited.

While storage of said vehicles in a fenced in yard may address some of the aesthetic goals of this section, it does not address the health and safety concerns. The Code states that said vehicles shall be completely enclosed within a building. This Court finds that Butler's storage of said vehicles in a fenced in yard was in violation of the Code.

For all of the above stated reasons, the trial court did not err in finding Butler in violation of City Code section 13-202.

### E. City Code section 17-105

The final code provision which Butler was found to have violated is City Code section 17-105. This code section directs that all garbage and refuse be removed from private residences twice each week or as often as is deemed necessary by the director.

11

Section 17-105(4) further directs that quantities of garbage and refuse materials resulting from the repair, excavation, construction or destruction of buildings shall be removed and disposed of by the contractor, owner or person having same in charge by a method satisfactory to the director of health and sanitation. Butler was charged with a violation of this Code section for having a large pile of lumber, old building materials and debris in his yard.

Other than the general arguments addressed earlier in this opinion, Butler raised no specific issues on appeal relating to this Code violation. We find that the evidence supports the trial court's finding that Butler was in violation of City Code section 17-105.

In summary, we find that the trial court did not err in finding Butler in violation of City Code sections 13-103, 13-202, and 17-105. However, the trial court erred in finding Butler in violation of City Code sections 13-104 and 13-105. Under the general penalty provision, the trial court may impose a fine of no more than five hundred dollars ($500.00) for each violation. While the fine of $250.00, imposed by the trial court for the five code violations, is still within the allowable range, this Court cannot know if the trial court would have imposed the same fine for three code violations. Therefore, we shall remand this case back to the trial court for a new determination. The portion of the trial court's order instructing Butler to comply with the City Code within fifteen (15) days shall stand unaffected.

## V. Conclusion

The judgment of the trial court is hereby affirmed in part, reversed in part, and remanded for determination of fine. Costs of this appeal are taxed one-half to Appellant and one-half to Appellee, for which execution may issue if necessary.

_____

_____

HIGHERS, J.

12

CONCUR:

_____
FARMER, J.


_____
LILLARD, J._

13