# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 23, 2010

## STATE OF TENNESSEE v. ANDREW REGINALD MacKINNON

### Direct Appeal from the Circuit Court for Sevier County
### No. 13164-II     Richard R. Vance, Judge

---

### No. E2009-00093-CCA-R3-CD - Filed March 30, 2011

---

A Sevier County Circuit Court jury found that the Defendant, Andrew Reginald MacKinnon, violated the implied consent law. See T.C.A. § 55-10-406 (2006) (amended 2008, 2009, 2010). The trial court ordered that his driving privileges be revoked for one year. On appeal, the Defendant contends that (1) the trial court erred by failing to grant his motion to suppress because the State failed to lay a proper foundation for admitting a witness's opinion testimony into evidence and (2) the jury instructions for violation of the implied consent law were insufficient because the trial court failed to define "reasonable grounds." Because the trial court failed to determine the issue of the implied consent violation, submitting it to the jury instead, we vacate the judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated;
### Case Remanded

JOSEPH M. TIPTON, P. J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined. NORMA MCGEE OGLE, J., filed a dissenting opinion.

Bryan E. Delius (at trial) and Richard L. Burnette (on appeal), Sevierville, Tennessee, for the appellant, Andrew Reginald MacKinnon.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James B. Dunn, District Attorney General; and George C. Ioannides, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant was tried for driving under the influence of an intoxicant (DUI) and for violating the implied consent law, i.e, refusing to take a test to determine the amount of alcohol in his blood. Both issues were submitted to the jury. The jury acquitted the Defendant of DUI but found him "guilty" of violating the implied consent law. The trial court stated that it "approve[d] the verdict" and revoked the Defendant's driver's license.

At the trial, Pigeon Forge Police Officer Lynn Miller testified that on December 28, 2007, he parked his patrol car in the median on Highway 441 near Ogle Drive around 9:00 p.m. The speed limit in the area was thirty-five miles per hour. He said he saw a car traveling south at a high rate of speed and passing other vehicles "pretty much like they were sitting still." He pulled into traffic and activated his patrol car's blue lights, which automatically turned on his car's video camera. He said that the speeding car pulled to the side of the road and stopped and that he approached the driver, who was the Defendant. He said that the Defendant's speech was "kind of slow, slurred," that the Defendant's eyes were bloodshot, and that he smelled alcohol inside the Defendant's car. He said he smelled alcohol on the Defendant when the Defendant got out of his car. He said he administered the walk-and-turn and one-legged stand field sobriety tests to the Defendant. Based upon the Defendant's performance on the tests, Officer Miller arrested him. He said that he drove the Defendant to the police department and that he informed the Defendant about the implied consent law. He said that he read an implied consent form to the Defendant and that he gave the form to the Defendant to read. He said the Defendant refused to submit to a blood or breath test. The State played the videotape from Officer Miller's patrol car for the jury.

On cross-examination, Officer Miller testified that he did not use radar to determine the speed of the Defendant's car. He said he "made a guess" and estimated the car's speed to be fifty-two miles per hour. He acknowledged that when he turned on his patrol car's blue lights, the Defendant stopped promptly, produced all requested documents, and was cooperative. He said the Defendant did not stagger or sway when he got out of the car.

The Defendant testified that on the night of December 28, 2007, he drove to a Walgreens Pharmacy in Pigeon Forge with a prescription for his wife, who was very sick. He said he dropped off the prescription and spoke with the pharmacist. He said the pharmacist understood the urgency and told him to return in one hour. He said that he drove to the Smoky Mountain Brewery and that he ate a sandwich and drank one sixteen-ounce beer. He said he was at the restaurant for about twenty minutes. He said that he did not wait for his bill and that he left twenty dollars on the table. He said that as he drove to pick up his wife's medicine, he saw a patrol car's blue lights and pulled over. He said that he suffered from ringing in his ears, that it affected his hearing and speech, and that he was nervous

because his wife needed her medication. He said that after he was arrested, Officer Miller asked him to submit to a breath test. The Defendant said he requested to speak with "somebody" about whether he should submit to the test. He said that he was not concerned he had consumed too much alcohol to drive and that he was not intoxicated.

On cross-examination, the Defendant testified that he did not believe he was speeding and noted that Officer Miller did not give him a speeding ticket. He acknowledged that Officer Miller read an implied consent form to him, that he looked at the form, and that he considered whether he should submit to the test. He said he decided to refuse to submit to a blood or breath test.

Thomas Ham, a licensed private investigator, testified that the pavement where Officer Miller administered the field sobriety tests was uneven and that the Defendant's everyday speech was "kind of stuttered and kind of nasally slurred speech." Gary Runyan, a pharmacist at the Pigeon Forge Walgreens, testified that the Defendant left a prescription in the drive-thru on the night of December 28, that he spoke with the Defendant for about ten minutes, and that the Defendant did not appear to be intoxicated.

Kelly Merriman testified that she was employed at the Defendant's restaurant. She said that on the night of December 28, the Defendant called her and asked her to sit with his wife while he drove to Walgreens. She said that she went to the Defendant's house, that she helped the Defendant settle his wife into bed, and that she stayed with her while the Defendant drove to the pharmacy. She said she did not smell alcohol on the Defendant. Based on the foregoing evidence, the jury acquitted the Defendant of DUI but found him guilty of violating the implied consent law. This appeal followed.

Initially, as a matter of jurisdiction, we consider whether the jury had the legal authority to determine the Defendant's guilt for violating the noncriminal implied consent violation at issue in this case. Relevant to this case, Tennessee Code Annotated section 55-10-406(a) provides the following for such an implied consent violation:

> (1) Any person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood, a test or tests for the purpose of determining the drug content of the person's blood, or both tests. However, no such test or tests may be administered pursuant to this section, unless conducted at the direction of a law enforcement officer having reasonable grounds to believe the person was driving while under the influence of alcohol[.]

. . .

(4)(A) If such person, having been placed under arrest and then having been requested by a law enforcement officer to submit to either or both tests, and having been advised of the consequences for refusing to do so, refuses to submit, the test or tests to which the person refused shall not be given, and the person shall be charged with violating this subsection (a). The determination as to whether a driver violated this subsection (a) shall be made at the same time and by the same court as the court disposing of the offense for which the driver was placed under arrest. If the court finds that the driver violated this subsection (a), except as otherwise provided in subdivision (a)(5), the driver shall not be considered as having committed a criminal offense; however, the court shall revoke the license of the driver for a period of [one year].

In this section, the use of "court" refers to the trial judge. See, e.g., T.C.A. § 55-10-406(a)(5) (regarding whether "the court or jury finds that the driver violated" the implied consent law as a criminal offense).

The Code gives to the trial court, not a jury, the authority for determining whether the noncriminal implied consent law was violated. We should not allow that decision to be delegated to a jury contrary to the statute. We also do not believe that the trial court's approving the jury's finding suffices or renders harmless the trial court's lack of a proper finding.

In State v. Charles Hopson Stewart, No. M2008-00474-CCA-R3-CD, Warren County (Tenn. Crim. App. Oct. 6, 2008), the trial court allowed the drug court team to decide whether the defendant's probation should be revoked. When the team returned its recommendation that the defendant be terminated from the program and serve his original sentence, the trial court ruled that it affirmed the recommendation of the team and revoked probation. This court reversed, holding that the revocation statute gave the trial court the authority to revoke probation and to determine the resulting sentence consequence and that this authority could not be delegated. Id., slip op. at 4-5. Although the trial court affirmed the recommendation, this court noted that the record failed to reflect that the trial court "engaged in its own deliberation of the proper disposition of the case." Id., slip op. at 5. It concluded that the defendant's due process right to a proper hearing before the trial judge had been violated. Similarly, there is nothing in the record of the present case to show that the

-4-

trial court made an independent determination of whether the Defendant violated the implied consent law.

## I. Suppression of Evidence

The Defendant contends that the trial court erred by failing to grant his motion to suppress evidence. Specifically, he argues that the State did not lay a proper foundation for admission of Officer Miller's opinion testimony regarding the speed of the Defendant's car. The State contends that the trial court properly denied the motion. We conclude that the Defendant is not entitled to relief.

The Defendant filed a pretrial motion to suppress, arguing that "the officer had no specific, objective facts on which to have a reasonable suspicion that Mr. MacKinnon was engaged in any criminal activity" because the officer "did not utilize his radar to ascertain [the Defendant's] alleged speed." Immediately before the trial, the trial court held a brief suppression hearing. No witnesses testified at the hearing, and both parties agreed that the court should base its ruling on Officer Miller's preliminary hearing testimony. The trial court stated that it had reviewed "the relevant portions of the transcript of the preliminary hearing . . . contained within pages six through 17 and pages 30 and 31 on cross-examination" and ordered that those pages of the preliminary hearing transcript be introduced into evidence as Exhibit 1.

Officer Miller testified at the preliminary hearing that in order to obtain his radar certification, he had to "judge vehicles – I think it's either 100 or 200 vehicles and we have to guess and be within plus or minus two miles an hour of the vehicle speed." He stated that he continued to check his accuracy judging the speed of vehicles every day. On the night of December 28, 2007, Officer Miller saw the Defendant "traveling . . . at a high rate of speed in reference to the other vehicles on the roadway, traveling southbound on U.S. Highway 441." He said he did not use his patrol car to pace the speed of the Defendant's car and "was guessing that it was over 50 miles per hour." He later stated that "[b]ased on the training that I do for radar certification, I would say [the Defendant's speed] was 53" miles per hour in a thirty-five-mile-per-hour zone. Officer Miller stopped the Defendant for speeding.

Before the trial court's ruling on the motion to suppress, the defense argued that Officer Miller did not have reasonable suspicion to stop the Defendant's car because Officer Miller estimated the Defendant's speed by comparing it to other vehicles on a dark, rainy night and did not use radar. The court noted that Officer Miller testified as to his radar certification training and that the officer used his training to conclude the Defendant was traveling more than fifty miles per hour in a thirty-five-mile-per-hour zone. The court determined that the officer's conclusion was "more than a guess. . . . [Y]ou could refer to

it as an educated or trained estimate rather than a guess." The court held that the officer had reasonable suspicion to stop the Defendant and denied the Defendant's motion to suppress.

The Defendant argues that Officer Miller was not qualified to give his opinion about the Defendant's speed pursuant to Tennessee Rule of Evidence 701, which provides that when a witness is not testifying as an expert, "the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."

First, we note that the Defendant presents a search and seizure issue, seeking to exclude evidence that he claims was found as a result of an illegal stop of his car. We question whether the exclusionary rule applies in a noncriminal implied consent proceeding that results in a revocation of a driver's license. "While it has been held that the exclusionary rule does not apply to a civil proceeding, it is usually held that the rule applies to a civil proceeding which is quasi-criminal in nature, or in which the government is seeking to exact a penalty or in some way punish a person." City of Jackson v. Butler, 10 S.W.3d 250, 253 (Tenn. Ct. App. 1999). No previous Tennessee case has considered whether the exclusionary rule applies in an implied consent proceeding. Other states are split on the issue, although some are interpreting statutes different from Tennessee's. See generally, Flem Whitehead, III & Donald H. Nichols, 1 Drinking/Driving Litigation: Criminal and Civil, § 11.11, "Exclusionary rule in implied consent" (2d ed. 2006) (Supp. 2010); Thomas M. Fleming, Annotation, Admissibility, in motor vehicle license proceedings, of evidence obtained by unlawful search and seizure, 23 A.L.R. 5th 108 (1994). Because the parties have not briefed the issue, and the suppression issue raised by the defendant has been waived and is not supported by an adequate record, we need not settle this question now.

In this regard, the Defendant's contention is to no avail. As for his claim that Officer Miller was not qualified to give an opinion about the Defendant's speed, the record does not reflect a similar claim at the preliminary hearing, in his motion to suppress, at the suppression hearing, in his motion for new trial, or at the motion hearing. Thus, the issue was not properly raised on appeal. See T.R.A.P. 3(e). We note as well that the trial court ordered, without any objection from the Defendant, that only seven pages of the officer's direct preliminary hearing testimony and only two pages of his cross-examination testimony be included as an exhibit. Upon review of the exhibit, it is apparent that the officer gave more direct and cross-examination testimony than is in the record. In denying the Defendant's motion to suppress, the trial court noted that the defense cross-examined Officer Miller "extensively" on the issue of reasonable suspicion. However, that "extensive" cross-examination testimony is not reflected in the two pages of cross-examination testimony included in the exhibit and thus the appellate record. In fact, there is no cross-examination

testimony in the record regarding Officer Miller's radar certification training or what he observed before the Defendant stopped for the officer's blue lights. As a general principle, relief is not available to "a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." T.R.A.P. 36(a). Because the Defendant failed to raise this issue in the trial court proceedings and failed to proffer more of the testimony as an exhibit, we are left with an inadequate record. See Tenn. R. Evid. 103(a)(1). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). The Defendant is not entitled to relief.

## II. Jury Instructions

The Defendant contends that his right to due process was violated because the trial court failed to define "reasonable grounds" when it instructed the jury on violation of implied consent. The State argues that the Defendant has waived this issue because he failed to object to the instructions at trial and that, regardless, "reasonable grounds" is of common understanding. The Defendant responds that he is entitled to plain error relief because the jury's acquitting him of DUI calls into question whether the jury would have found him guilty of violating the implied consent law if the trial court had defined "reasonable grounds."

We conclude that the Defendant is not entitled to relief. The fact that the trial court, not the jury, should have determined whether the implied consent law was violated renders the issue moot. It is of no consequence that the jury was instructed regarding the implied consent charge.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is vacated, and the case is remanded.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE