**Peter STECHCON, Jr., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 23898.**

United States Court of Appeals, Ninth Circuit.

March 10, 1971.

---

Robert Blumenthal, San Francisco, Cal. (argued), of Burton & Blumenthal, San Francisco, Cal., for appellant.

Jack G. Knebel, San Francisco, Cal. (argued), McCutchen, Doyle, Brown & Enersen, James L. Browning, Jr., U. S. Atty., John F. Meadows Shipping & Admiralty Section, San Francisco, Cal., for appellee.

Before JERTBERG, MERRILL and BROWNING, Circuit Judges.

**PER CURIAM:**

In his complaint in the district court, appellant sought to recover damages for personal injuries alleged to have been sustained by him while employed as a seaman on appellee's vessel, the S. S. Exhibitor, resulting from a physical assault made upon him by William D. Harris, also a member of the crew aboard the vessel.

Appellant based his claim to recover damages on the unseaworthiness of the vessel and the negligence of appellee.

The district court granted appellee's motion for a summary judgment in favor of appellee as a matter of law, on the ground that there existed in the record no genuine issue as to any material fact. .

From our view of the record we are satisfied that there exists in the record no genuine issue as to any material fact with respect to appellant's claim that his injuries are the result of any negligence on the part of appellee. We find no evidence in the record that would warrant the trier of fact to conclude, with reason, that Harris constituted a foreseeable risk to appellant against which appellee had the duty to guard. See Boorus v. West Coast Trans-Oceanic Steamship Line, 299 F. 2d 893 (9th Cir. 1962); Guzzi v. Seas Shipping Co., Inc., 270 F.2d 714 (2d Cir. 1959); Connolly v. Farrell Lines, Inc., 268 F.2d 653 (1st Cir. 1959).

In respect to appellant's claim based on the unseaworthiness of the vessel, however, we believe that the district court erred in entering the summary judgment. In our view there is sufficient evidence in the record which would warrant a trier of fact to conclude, with reason, that in this case the warranty of seaworthiness was breached.

The warranty of seaworthiness, as applied to a seaman, is "that he is equal in disposition and seamanship to the ordinary men in the calling." Keen v. Overseas Tankship Corp., 194 F.2d 515, at 518 (2d Cir.), cert. den. 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952).

Approved, Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955).

The question presented to us is the same one posed by the Supreme Court in *Boudoin, supra,* at page 340, 75 S.Ct. at page 385:

> "Was the assault within the usual and customary standards of the calling? Or is it a case of a seaman with a wicked disposition, a propensity to evil conduct, a savage and vicious nature?"

The Supreme Court answered the question by stating:

> If it is the former, it is one of the risks of the sea that every crew takes. If the seaman has a savage and vicious nature, then the ship becomes a perilous place."

The record before us conclusively shows that appellant's injuries were not sustained in a "sailor's brawl," but were inflicted, without warning, by his assailant through the use of his fists, in an unprovoked attack upon appellant from the rear, which blows knocked appellant to the deck where the pounding continued until the assailant was pulled off the appellant by other crew members. The assailant was Harris, whose weight was approximately seventy-five pounds more than appellant's. Appellant offered no defense to the attack. There is no evidence that either party had been drinking or quarreling prior to the attack. No weapon was involved in the attack. The record is silent as to the reasons for the attack.

The following are extracts from appellant's deposition, taken by appellee:

"Q. Then I take it—well, you tell me what happened.

"A. As soon as I got into the library, about two or three feet, why, I got hit from behind about three or four times. It knocked me to the deck. I didn't know what was coming off.

I turned around. I was on my knees. I was getting up off the deck and I turned around on my knees to see who it was, and there was Harris above me with his glasses still on with his fists coming right at me, and he knocked me several times in here and cut my eye.

I had three or four stitches put in that eye. Then the crew members pulled Harris off me."

\* \* \* \* \* \*

"Q. Do you remember where the first blows landed?

"A. Right in my back. He hit me three or four times there.

"Q. What part of your back?

"A. In the left side, right in the kidney area.

"Q. You said before—

"A. My right side, excuse me.

"Q. Do you remember how many blows were landed there?

"A. No.

"Q. Did those blows knock you to the ground?

"A. Yes.

"Q. Then you were struck around the left eye?

"A. I was on my knees, hands and knees, looking up to see who—what happened. I didn't know if somebody hit me or what happened, and I seen Harris right above me and just about that time he proceeded to hit me about the face and head.

"Q. I take it you didn't have any warning before he hit you?

"A. None. I thought he was still having his evening meal."

\* \* \* \* \* \*

"Q. Going back to the fight again now, did you fight back at all?

"A. No.

"Q. How did the fight end? What caused the fight to end?

"A. They pulled him off of me when I was on the floor. He was still beating the hell out of me when I was on the deck helpless.

"Q. Do you remember who pulled him off?

"A. No, I don't."

We intimate no view as to what conclusion the trier of fact should reach on this record. We hold only that appellant is entitled to present the issue of unseaworthiness to the trier of fact.

The summary judgment is vacated and the cause remanded to the district court for further proceedings in a manner not inconsistent with the views herein expressed.