[No. 11456–5–I.   Division One.   July 23, 1984.]

GABRIELLE G. SNOW, *Individually and as Executrix, Appellant,* v. WHITNEY–FIDALGO SEAFOODS, INC., *Respondent.*

*George H. Luhrs,* for appellant.

*Schwabe, Williamson & Wyatt, Frank Draper,* and *Robert M. Kraft,* for respondent.

DURHAM, C.J.—The widow of Robert Snow brought this action for damages under the Jones Act (46 U.S.C.A. § 688) and general maritime law against Whitney–Fidalgo Seafoods, Inc. (Whitney–Fidalgo), employer of the decedent and owner of the ship of which he was captain at the time

of his death. Snow appeals from a jury verdict in favor of Whitney–Fidalgo. She claims that the trial court erred in dismissing two of her three claims against Whitney–Fidalgo and in finding certain medical and character evidence inadmissible.

Robert Snow, age 67, was the captain of the M/V *Cirus,* a fishing boat owned by Whitney–Fidalgo. On September 8, 1979, the M/V *Cirus* was moored at a dock in Cordova, Alaska, near the Whitney–Fidalgo cannery. At about 3:45 p.m., Snow returned from town to the vessel. He had been drinking, and moved with some difficulty. As Snow boarded the ship, he was confronted by William Phillips, the ship's engineer, who also appeared to have been drinking. Phillips was younger than Snow, and weighed almost 300 pounds. Phillips grabbed Snow's shirt and began hitting him in the face. After several short swings, Phillips delivered a violent blow to Snow's head, knocking the captain backward over a railing and to the deck several feet below. Phillips then assumed command of the M/V *Cirus,* and ordered the crew to assist him in taking the vessel out to the fishing grounds. Captain Snow was covered with a blanket and left lying unconscious on the deck. After dinner, he was carried to his cabin. He was found dead the next morning. The M/V *Cirus* then returned to port.

Snow's widow sued Whitney–Fidalgo on three theories of recovery: (1) that the M/V *Cirus* was rendered unseaworthy because of Phillips' vicious nature, (2) that Whitney–Fidalgo was negligent either in hiring Phillips or in allowing him to remain a crew member given his violent nature, and (3) that Whitney–Fidalgo was negligent in failing to provide proper medical care for Snow, resulting in his death. At the close of Snow's case, the trial court dismissed her claim as to negligent hiring. The court also dismissed her claim of unseaworthiness at the close of the defendant's case. The claim of failure to provide medical care went to a jury, who found for Whitney–Fidalgo. Snow appeals.

UNSEAWORTHINESS

Snow first argues that the trial court erred in dismissing the unseaworthiness claim. We agree. Under general maritime law, a shipowner has an absolute duty to provide a vessel that is seaworthy. This warranty of seaworthiness is a species of liability without fault. *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 549, 4 L. Ed. 2d 941, 80 S. Ct. 926 (1960). The shipowner warrants that the vessel, together with its gear and personnel, are reasonably fit to complete the intended voyage. *Boudoin v. Lykes Bros. S.S. Co.,* 348 U.S. 336, 339, 99 L. Ed. 354, 75 S. Ct. 382, *amended,* 350 U.S. 811, 100 L. Ed. 727, 76 S. Ct. 38 (1955).

This warranty of seaworthiness may be breached if a shipowner employs a seaman with a violent disposition. *Boudoin v. Lykes Bros. S.S. Co., supra.* A seaman's conduct is not measured by the same standard as the conduct of ordinary men ashore. Instead, a seaman must be "equal in disposition and seamanship to the ordinary men in the calling.'" *Kirsch v. United States,* 450 F.2d 326, 327 (9th Cir. 1971) (quoting *Stechcon v. United States,* 439 F.2d 792, 793 (9th Cir. 1971)). Proof of a seaman's violent disposition may be established by either an assault with a dangerous weapon[1] or independent evidence of the "assailant's exceptionally quarrelsome nature, his habitual drunkenness, his severe personality disorder, or other similar factors." *Walters v. Moore–McCormack Lines, Inc.,* 309 F.2d 191, 193 (2d Cir. 1962); *see also Smith v. American Mail Line, Ltd.,* 361 F. Supp. 1110, 1113–14 (W.D. Wash. 1973), *aff'd,* 525 F.2d 1148 (9th Cir. 1975) and cases cited therein.

In general, contributory negligence or assumption of risk will not bar recovery in an unseaworthiness action. Instead, the plaintiff's negligence is taken into account in

---

[1] A particularly brutal assault, even if it does not involve a dangerous weapon, may itself provide sufficiently strong evidence of the viciousness of the assailant. *Smith v. American Mail Line, Ltd.,* 361 F. Supp. 1110, 1114 (W.D. Wash. 1973), *aff'd,* 525 F.2d 1148 (9th Cir. 1975); *see Stechcon v. United States,* 439 F.2d 792 (9th Cir. 1971) (unprovoked attack from behind with fists presents a question of fact on the issue of unseaworthiness).

mitigating damages. *See Socony–Vacuum Oil Co. v. Smith,* 305 U.S. 424, 428–29, 83 L. Ed. 265, 59 S. Ct. 262 (1939). Nevertheless, a limited form of traditional contributory negligence operates in admiralty in the guise of the "primary duty" doctrine. *See* Note, *The Primary Duty Rule in Admiralty,* 27 Hastings L. J. 835, 861–62 (1976). Under this doctrine, a plaintiff is barred from recovery if his injury arises from the breach of a "contractual" duty which he has "consciously assumed as a term of his employment." *Reinhart v. United States,* 457 F.2d 151, 153 (9th Cir. 1972) (quoting *Walker v. Lykes Bros. S.S. Co.,* 193 F.2d 772, 773 (2d Cir. 1952)). In *Reinhart,* the plaintiff was injured when he fell through a hole in some wooden flooring in a ship's hold. The trial court denied recovery, finding that the plaintiff had been directly responsible for the safety of flooring through which he fell, and that his injury was caused by his failure to fulfill that responsibility. *Reinhart,* 457 F.2d at 153. The Ninth Circuit affirmed on the basis of the primary duty doctrine. *Reinhart,* 457 F.2d at 154. A review of federal case law shows that a successful defense under the primary duty doctrine must establish (1) a primary duty owed by the plaintiff, (2) plaintiff's breach of that duty, and (3) injury to the plaintiff as a result of the breach. *See Reinhart v. United States, supra,* and cases cited therein.

We find that the dismissal of Snow's unseaworthiness case was erroneous because there were issues of fact concerning both the existence of a primary duty and Snow's breach of that duty.

First, there was an issue of fact as to who had the primary duty to retain a seaworthy crew, *i.e.,* Captain Snow or Whitney–Fidalgo. At trial, a Whitney–Fidalgo representative testified that a ship's captain had the full responsibility for discharging a crew member, although the representative acknowledged that the company also had the right to discharge any person. The *Cirus'* cook testified that she was hired by the company rather than by the captain, although this statement appeared inconsistent with her deposition

testimony. This evidence at least presented a factual dispute concerning the scope of Snow's hiring duties.[2]

Second, there was an issue of fact regarding Snow's breach of his primary duty, if any, to maintain a seaworthy crew. In dismissing the case, the court reasoned:

> Captain Snow as master, under the testimony, uncontradicted, was directly responsible for the selection and control of the crew. Two, if in fact Chief Engineer Phillips was of such a vicious nature, which is the only way we get to seaworthiness, *it seems to just follow logically that Captain Snow failed to fulfill his responsibility* to the selection, maintenance, control of the crew, including Phillips; and, three, this breach of his contractual duty to the shipowner, to–wit, the defendant in this case, under the plaintiff's theory, under the doctrine of seaworthiness, caused his injury, and therefore barred his recovery under the theory of seaworthiness.

(Italics ours.) Here, the court inferred a breach of Snow's duty from the fact that he was injured by a member of his own crew. As Snow argues, this reasoning imposes a type of absolute liability on the captain for the seaworthiness of his crew. However, in applying the primary duty doctrine, federal courts have looked to the injured party's knowledge of the defective condition, as well as to the presence of any attempts to remedy the defect. *See Reinhart,* 457 F.2d at 152, 154; *Dixon v. United States,* 219 F.2d 10, 16–17 (2d Cir. 1955); *Stanworth v. American Stern Trawlers, Inc.,* 523 F.2d 46 (9th Cir. 1975). Thus, the application of the primary duty rule requires that the plaintiff negligently breach a primary duty. *See* Note, *The Primary Duty Rule in Admiralty, supra.* Here, Snow offered evidence that Phillips concealed his ill will toward the captain.[3] This

---

[2]The Ninth Circuit also appears to treat as a question of fact the existence of a captain's "primary duty" to retain a seaworthy crew. *See Admiral Towing Co. v. Woolen,* 290 F.2d 641, 648 (9th Cir. 1961) (captain not precluded from recovering from shipowner for inadequate crew, even where captain had hired crew). *Accord, In re New Eng. Fish Co.,* 465 F. Supp. 1003, 1009 (W.D. Wash. 1979).

[3]The court dismissed the testimony as irrelevant. We hold *infra* that this was error.

raised a factual question for the jury as to Snow's knowledge of Phillips' dangerous propensities and, accordingly, if Snow breached his duty to take proper countermeasures.

■ In ruling on a motion to withdraw an issue from a jury, the trial court must view the evidence in the light most favorable to the nonmoving party. If there is any justifiable evidence from which reasonable minds might find for the nonmoving party, the issue is for the jury. *Levy v. North Am. Co. for Life & Health Ins.*, 90 Wn.2d 846, 851, 586 P.2d 845 (1978). Viewing the evidence in the light most favorable to Snow, there were issues of fact concerning the existence and breach of a primary duty. Thus, it was error to dismiss Snow's unseaworthiness claim.

### NEGLIGENT RETENTION

■ Snow next argues that the trial court erred in dismissing her claim that Whitney–Fidalgo was negligent in retaining Phillips because of his violent disposition. Again, we agree. Although the case for negligent retention here is admittedly weak, Jones Act cases are taken from a jury only in the most extreme circumstances. As one court has stated:

> There is no workmen's compensation act for mariners or railroaders. For them, compensation depends on a jury finding of negligence. It is well established that the role of the jury is significantly greater in Jones Act and FELA cases than in common law negligence actions. The right of the jury to pass upon the question of fault and causation must be most liberally viewed. . . . Indeed, "trial by jury is part of the remedy." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 360, 82 S.Ct. 780, 783, 7 L.Ed.2d 798 (1962).

(Citations omitted.) *Johannessen v. Gulf Trading & Transp. Co.*, 633 F.2d 653, 656 (2d Cir. 1980). A commentator has similarly noted:

> Apparently the only way in which defendant can win a directed verdict [under the Act] is to establish by *indisputable and uncontroverted evidence* both the cause of the accident and its own freedom from negligence.

(Italics ours.) G. Gilmore & C. Black, *Admiralty* 378 (2d ed. 1975).

Snow argues that a jury could have found negligence by Whitney–Fidalgo in retaining Phillips, because of his general reputation for violence and the fact that he spent the off–season employed in Whitney–Fidalgo's yard.[4] Although the basis upon which one could infer negligence from this evidence is slight, it is not the case, as Whitney–Fidalgo claims, that there was *no evidence* on the matter of negligent retention. Accordingly, the issue should have gone to the jury.

### EVIDENTIARY RULINGS

Snow next assigns error to evidentiary rulings made by the trial court. Although these issues need not be resolved to dispose of this case, they will probably resurface on retrial and, thus, should be considered.

Snow first claims that the trial court erred by disallowing testimony of Phillips' reputation and of statements Phillips made that were critical of Captain Snow. We agree. Snow offered evidence at trial of Phillips' reputation for violent and unpredictable behavior and of Phillips' frequent derogatory remarks about the captain in his absence. The trial court disallowed the reputation evidence as hearsay and the evidence of the derogatory remarks as irrelevant.

In suits for unseaworthiness arising from the allegedly vicious propensities of a sailor, as well as in suits for negligent employment of a person of poor character, the seaman's or employee's character is a central issue. Accordingly, evidence of reputation and specific instances of conduct is admissible to show character.[5] *See* 5 K. Tegland,

---

[4]The trial court also excluded evidence of Phillips' reputation. We hold *infra* that this was error.

[5]ER 405 states:

"(a) **Reputation.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. On cross examination, inquiry is allowable into relevant specific instances of conduct.

Wash. Prac., *Evidence* 312–13 (2d ed. 1982). Whitney–Fidalgo argues that evidence of Phillips' character was irrelevant because it did not rise to the level of viciousness required for an unseaworthiness claim. However, this argument confuses the relevance of the evidence with its sufficiency to meet a standard of proof. If the evidence was insufficient to show unseaworthiness, the proper remedy is not to exclude the evidence, but to dismiss the case.[6] At any rate, evidence that Phillips made derogatory remarks about Snow in his absence was also relevant to Snow's knowledge of Phillips' violent disposition.

Whitney–Fidalgo next argues that the reputation evidence was properly excluded because it was hearsay, and because Snow had not made a proper showing to admit the evidence pursuant to the hearsay exception for such evidence. ER 803(a)(21).[7] This argument is without merit. The proper use of reputation evidence is noted by McCormick:

A high probability of reliability is provided by restricting the use of reputation to those subjects in regard to which persons with personal knowledge are likely to have disclosed facts which have been the subject of general inquiry; . . .

E. Cleary, *McCormick on Evidence* 749 (2d ed. 1972). Phillips' reputation for violence was a proper subject of general

---

"**(b) Specific Instances of Conduct.** In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."

[6]Although the trial court dismissed Snow's unseaworthiness claim, it did so based on the "primary duty" doctrine. *See Stechcon,* 439 F.2d at 792; footnote 1. The court conceded that Snow had made a "prima facie case of unseaworthiness" based on Phillips' character.

[7]ER 803(a) states in part:
"**Specific Exceptions.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
" . . .
"(21) *Reputation as to Character.* Reputation of a person's character among his associates or in the community."

inquiry in the fishing community, so that those with personal knowledge of his reputation would be likely to disclose the information. There is no requirement, as Whitney–Fidalgo contends, that the information come directly from those with personal knowledge, or that there be a showing that the community has, in fact, reached a general conclusion. Evidence of Phillips' reputation was, therefore, admissible despite its hearsay quality.

Whitney–Fidalgo also argues that the prejudicial effect of evidence of Phillips' character outweighed its probative value. Because evidence of character was essential to Snow's case, however, it was inevitably prejudicial, and should not have been excluded on that basis.

Finally, Snow assigns error to the trial court's ruling which struck part of the testimony of an expert medical witness after the witness referred, as a basis for his opinion, to facts outside the scope of a hypothetical question. We agree that the witness should have been given an opportunity to cure the improper reference. However, due to the peculiar circumstances in which this issue arose, we believe it is unlikely to come up again.

### JURY INSTRUCTIONS

Snow next argues that the trial court erred by utilizing the term "proximate cause" in the jury instructions. We disagree. Federal courts have found the use of this term in admiralty cases to be inadvisable but not clearly erroneous.[8] For the same reasons, we find that it was not error to instruct the jury as to the standard definition of the term:

The term "proximate cause" means a cause which in a

---

[8]As one court stated: "We might suggest that the legalese 'proximate' is a word not too helpful to a lay jury, and might well be avoided altogether, but it can do no harm so long as the meaning appropriate to the case is articulated. Where, as in the case at bar, the charge includes an instruction to reduce the verdict by the proportion, if any, that plaintiff's negligence contributed, the articulation is apparent." *Peymann v. Perini Corp.,* 507 F.2d 1318, 1324 n.3 (1st Cir. 1974), *cert. denied,* 421 U.S. 914 (1975); *accord, Joyce v. ARCO,* 651 F.2d 676, 685 (10th Cir. 1981).

direct sequence, unbroken by any new independent cause, produces the injury complained of and without which such injury would not have happened.

Instruction 8. Nevertheless, we agree with Snow's claim that the jury should have been instructed to reduce the verdict by the proportion that Snow's own negligence contributed to his death, pursuant to well established principles of admiralty law. *See Socony–Vacuum Oil Co. v. Smith*, 305 U.S. 424, 428–29, 83 L. Ed. 265, 59 S. Ct. 262 (1939). We find, however, that Snow's proposed comparative negligence instruction was misleading, so that the trial court's failure to give it was not error.[9]

■ Snow also argues that the court erred in refusing to give her requested instruction 20:

> You are instructed that where the external symptoms indicate an injury the officer in charge of a vessel is required to provide proper medical care when a vessel is in port or immediately upon its arrival in port.

However, because the court's general negligence instruction allowed Snow to argue that the defendant had an immediate duty to provide proper medical care, it was not error to refuse to give instruction 20. *Levea v. G.A. Gray Corp.*, 17 Wn. App. 214, 562 P.2d 1276 (1977).

■ Finally, Snow assigns error to the issuance of an instruction allowing the jury to discount any damage award to present cash value. WPI 34.02. We agree that it was error to issue this instruction in the absence of evidence to guide the jurors as to the appropriate rate of interest to apply in discounting the award. *Hinzman v. Palmanteer*, 81 Wn.2d 327, 336, 501 P.2d 1228 (1972).

The judgment is reversed, and the matter remanded for a

---

[9]Snow's proposed instruction 21 reads in pertinent part:

"If you find from the evidence that [defendant's] negligence existed and that it played any part, even the slightest in producing the injury or death, you may find the employer may be held responsible for such death."

This instruction fails to make clear that the plaintiff's recovery must be *reduced* in proportion to his own negligence. It is, thus, an incomplete statement of the principle of comparative negligence.

new trial in accordance with this opinion.

CALLOW and ANDERSEN, JJ., concur.

Reconsideration denied September 6, 1984.

Review denied by Supreme Court December 21, 1984.