# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CYNTHIA RENEE SCHIRO, individually, | No. 54768-6-II |
| Appellant, | |
| v. | |
| BOYNE USA, INC., a Foreign Corporation; BOYNE USA, INC., d/b/a CRYSTAL MOUNTAIN, INC., and CRYSTAL MOUNTAIN, INC., a Domestic Washington Corporation, and BOYNE WEST INC., d/b/a CRYSTAL MOUNTAIN RESORT and "JANE DOE" EMPLOYEE and "JOHN DOE" EMPLOYEE, individually and the Marital Community Composed Thereof; and JANE DOES Nos. 1-10, | UNPUBLISHED OPINION |
| Respondents. | |

CRUSER, J. – Cynthia Schiro appeals a jury verdict finding that Crystal Mountain was not liable for Schiro's fall that occurred while she was skiing at Crystal Mountain. Schiro also appeals the trial court's order denying Schiro a new trial. Schiro argues that the trial court erred when it dismissed her negligent hiring and negligent retention claims, limited and excluded evidence regarding the Crystal Mountain employee alleged to have committed the negligent act at issue in this case, denied Schiro's motion for a new trial after an expert witness for Crystal Mountain violated the trial court's orders in limine, and failed to sanction Crystal Mountain's attorneys.

We hold that the trial court did not err in dismissing the negligent hiring and negligent retention claims and even if it did err, the error was harmless. Additionally, we hold that Schiro fails to show that the court improperly limited or excluded any evidence, or that she suffered any prejudice from the court's exclusion of evidence, and that the trial court did not abuse its discretion when it denied Schiro's motion for a new trial. Finally, we decline to consider whether the trial court erred in not sanctioning Crystal Mountain's attorneys.

Accordingly, we affirm.

FACTS

I. UNDERLYING INCIDENT

Cynthia Schiro and her husband were staying at their friends' house in the Gold Hills community located up a hill at Crystal Mountain for a weekend ski trip. On the first day of the trip Schiro skied without incident, including down the Gold Hills run. The next day, Schiro did not feel comfortable skiing down the Gold Hills run again because she had difficulty with the hill the day before. Schiro and her husband decided that instead of skiing down the Gold Hills run, they would take the Gold Hills ski lift, operated by Crystal Mountain, down the hill to reach easier runs for Schiro. Crystal Mountain allowed skiers to ride the chairlift down the hill by "downloading" onto the Gold Hills chairlift. 23 Verbatim Report of Proceedings (VRP) at 2387.

When Schiro and her husband skied up to the Gold Hills lift, Elisa Pope, a lift operator for Crystal Mountain, had just arrived at the lift and was about to give the main lift operator, Colin Bachmeier, a break.

In order to download onto the chairlift, skiers are required to remove their skis. When the Schiros approached, however, they had not removed their skis. Pope saw Schiro and her husband

2

skiing up the off-loading ramp. Pope was concerned for their safety because they were in the path of oncoming chairs. Pope asked the Schiros what they were doing, and they replied that they were " 'going this way.' " *Id.* at 2390. Pope told them that they could not do that. The Schiros then skied away.

The Schiros claimed that they skied to the top of the Gold Hills lift and told Pope that they wanted to take the lift down and Pope told them " 'No.' " 18 VRP at 1913. The Schiros thought Pope might not have understood them, so they moved closer and asked again. They claimed that Pope again said " 'No.' " *Id.* at 1913-14. Schiro's husband asserted that he then told Pope they were going to take their skis off but Pope ignored them. The Schiros were confused by Pope's response and decided to ski off.

Bachmeier had little memory of the event, and later at trial he was unable to clearly remember what happened other than Pope giving him a confused look after she spoke with the Schiros.

After leaving the lift, the Schiros decided to ski down the Gold Hills run. When Schiro was close to the bottom of the hill, she started to pick up her speed and fell. Schiro injured her wrist and knee in the fall; Schiro subsequently had five surgeries on her knee.

## II. PRETRIAL PROCEEDINGS

### A. COMPLAINT AND ANSWER

Schiro sued Crystal Mountain, alleging negligence, negligent hiring, and negligent retention. Crystal Mountain stipulated that Pope was acting within the scope of her employment at the time of the interaction but denied Schiro's claim that Pope denied her a download on the chair lift.

B. MOTION FOR SANCTIONS

During discovery, Schiro moved for sanctions because she felt Crystal Mountain was being dishonest in the discovery process and Crystal Mountain had failed to provide an adequately prepared CR 30(b)(6) deponent, causing depositions to have to be redone. The trial court declined to award sanctions at that time. Schiro moved for reconsideration. The court denied Schiro's motion for reconsideration, but it allowed Schiro to renew her motion for attorney fees and costs following the resolution of the discovery matters, if the new depositions revealed information that should have been made available earlier. There is no record of Schiro renewing the motion.

C. MOTIONS IN LIMINE

In preparation for trial, the parties brought motions in limine to admit and exclude evidence.

Schiro sought to introduce evidence that Schiro claimed would demonstrate that Pope, while in the dormitories during off-work hours, partied, drank alcohol, and used drugs, had a poor temperament outside of work, and had allegedly stolen a roommate's rings. Schiro also sought to introduce evidence of three guest complaints about Pope regarding incidents after Schiro's accident and an incident report documenting an incident in which a guest hit Pope with his skis.

The court granted Crystal Mountain's motion to exclude evidence about Pope's alleged drinking and drug use unless Schiro could connect this evidence to Pope's fitness to perform the duties of a lift operator on the day of the accident. The court also excluded any allegations that Pope had stolen a roommate's rings and the incident report about Pope being hit by a guest's skis. But the court allowed evidence about Pope's temperament outside of work. Additionally, the court ruled that Schiro could introduce the *existence* of the three customer complaints about Pope for

4

impeachment purposes, but ruled that the complaints themselves could not be admitted unless Schiro could establish the events in the complaint actually occurred.

Finally, Schiro sought to exclude " 'on average' " medical testimony from Crystal Mountain's medical expert, and any evidence that Schiro had previously been in a car accident.[1] Clerk's Papers (CP) 2578. The trial court granted both of these motions.

### III. TRIAL

The case proceeded to an approximately month-long jury trial. Pope, Schiro, Schiro's husband, and Bachmeier all testified consistently with their versions of events outlined above. Crystal Mountain called a medical expert, Dr. James Harris, to testify about Schiro's injuries.

### A. DR. HARRIS

During his testimony, Dr. Harris spoke about one of Schiro's MRIs showing evidence of chondromalacia, which is " 'sick cartilage.' " 16 VRP at 1646. Crystal Mountain asked if the chondromalacia was caused by the fall. Dr. Harris replied that chondromalacia was not related specifically to the trauma and chondromalacia "is a very common condition in the population . . . as high as 30 percent." *Id.* at 1647. Crystal Mountain redirected Dr. Harris, informing him that he should only testify about Schiro. Schiro still objected, and the court sustained the objection.

On cross, Schiro asked Dr. Harris, if chondromalacia was really just a general term. The doctor replied that it has very clear meaning within the orthopedic community, explaining, "It means that that person is part of the one-third of the population with a cartilage that's soft and fraying." *Id.* at 1722. Schiro moved on with her questioning without objecting.

---

[1] Schiro specified that " 'on average' " testimony is testimony about how a condition or an injury would impact an " 'average person' " or how an injury impacts a person " 'on average,' " as opposed testimony about the specific plaintiff in the case. CP at 2578.

Later in Dr. Harris' testimony, when discussing notes written by a doctor that treated Schiro, Schiro asked Dr. Harris, "so [the notes] didn't provide you any information?" 22 VRP at 2294. Dr. Harris replied, "Well, that part didn't, but there was a typewritten letter from 2014. I think it was actually written to [Schiro's attorney] by Dr. Finkleman related to an unrelated lawsuit." *Id.* Schiro moved on without objecting.

After Dr. Harris finished testifying, Schiro raised an objection, outside the presence of the jury, about Dr. Harris' testimony regarding averages and his reference to the letter about an unrelated lawsuit. Schiro moved for a mistrial or, in the alternative, for Dr. Harris' testimony to be stricken entirely. Schiro argued that a curative instruction was insufficient. The court denied the motion but stated that it was willing to consider a limiting instruction if Schiro wanted one.

B. MOTION FOR JUDGMENT AS A MATTER OF LAW

After Schiro rested her case, Crystal Mountain moved for judgment as a matter of law on the negligent hiring and negligent retention claims. Crystal Mountain argued that the negligent hiring and negligent retention claims could not be brought as a matter of law because Crystal Mountain agreed that Pope was acting within the scope of her employment at the time she allegedly denied the download to Schiro, and that Crystal Mountain was vicariously liable in the event the jury found that Pope denied the download. Thus, the claims of negligent hiring and retention were redundant.

The court granted Crystal Mountain's motion for judgment as a matter of law and dismissed Schiro's claims of negligent hiring and negligent retention with prejudice. The court agreed with Crystal Mountain that the claims of negligent hiring and retention were not proper

6

where there was no dispute that the employee's allegedly negligent act was committed within the scope of employment.

C. JURY INSTRUCTIONS AND VERDICT FORM

The jury was instructed that the negligent act on which Schiro relied for her claim was Pope's alleged denial of Schiro's request to download onto the chairlift. Crystal Mountain did not dispute that its employee, Pope, owed a duty to Schiro to provide her with a download if Schiro, in fact, requested one. Rather, Crystal Mountain disputed that Pope breached her duty of ordinary care to Schiro because it denied that Pope refused Schiro's request for a download.

The jury was presented with six questions. The first question was whether the defendant, Crystal Mountain, was negligent. The second question was whether, if Crystal Mountain was negligent, "[w]as such negligence a proximate cause of damages to the [p]laintiff?" CP at 3567. The jury was instructed that if it answered "no" to the first question, it should sign the verdict form and not answer the remaining questions.

D. VERDICT AND MOTION FOR A NEW TRIAL

The jury found that Crystal Mountain was not negligent. Schiro moved for a new trial, arguing, among other things, that the court erred in dismissing her negligent hiring and negligent retention claims, that the evidence regarding Pope was improperly restricted, and that Dr. Harris' " 'on average' " testimony and the doctor's statement about an unrelated lawsuit was misconduct that prejudiced Schiro's right to a fair trial. *Id.* at 3676.

The court denied Schiro's motion for a new trial, stating that it believed it properly dismissed her claims, that its evidentiary rulings were proper, and that Dr. Harris' remarks were not significant enough to affect the jury's verdict. With respect to the doctor's remarks, the trial

court made special note of the fact that Schiro neither objected to Dr. Harris' remarks at the time they were made nor requested a limiting instruction.

Schiro appeals.

## ANALYSIS

### I. NEGLIGENT HIRING AND NEGLIGENT RETENTION CLAIMS

Schiro argues that the trial court erred when it dismissed her negligent hiring and negligent retention claims as a matter of law because the trial court based its dismissal on its erroneous belief that negligent hiring and a negligent retention claims require that the employee be acting outside the scope of the employee's employment.

We hold that the trial court properly dismissed the claims because Schiro failed to provide a factual basis for her negligent hiring and retention claims. Furthermore, any error in dismissing these claims was harmless because the jury answered the factual threshold question of whether Crystal Mountain was negligent (meaning, whether Pope denied the download to Schiro) in the negative.

### A. LEGAL PRINCIPLES

#### 1. Standard of Review

Under CR 50, during a jury trial if a plaintiff has been fully heard on an issue and "there is no legally sufficient evidentiary basis for a reasonable jury to find . . . for that party" on that issue, then the trial court may grant a motion for judgment as a matter of law dismissing the plaintiff's claim. The court must conclude, "as a matter of law," there is no substantial evidence or reasonable inferences that could sustain a verdict for the nonmoving party. *Paetsch v. Spokane Dermatology Clinic, P.S.*, 182 Wn.2d 842, 848, 348 P.3d 389 (2015).

8

We review de novo a trial court's decision on a motion for judgment as a matter of law. *Clark County. v. Maphet*, 10 Wn. App. 2d 420, 433, 451 P.3d 713 (2019). When reviewing a trial court's ruling on a motion for judgment as a matter of the law, the appellate court must consider whether there was any legally sufficient evidentiary basis that a reasonable jury could have found for the party on the contested issue. *Mancini v. City of Tacoma*, 196 Wn.2d 864, 876-77, 479 P.3d 656 (2021).

*2. Negligent Hiring and Retention Claims*

An employer has a limited duty "to foreseeable victims to prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others," even when an employee is acting outside the scope of employment at the time. *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997). The causes of action for negligent hiring and retention arise out of this duty. *Id.* Negligent hiring and retention claims are based on the theory that it was the employer who wronged the injured party, and these claims are entirely independent of the liability an employer might have under the doctrine of respondeat superior. *Id.*

"To prove negligent hiring, the plaintiff must demonstrate that (1) the employer knew or, in the exercise of ordinary care, should have known of the employee's unfitness at the time of hiring; and (2) the negligently hired employee proximately caused the plaintiff's injury." *Rucshner v. ADT, Sec. Sys., Inc.*, 149 Wn. App. 665, 680, 204 P.3d 271 (2009).

For negligent retention, "An employer may be liable for harm caused by an incompetent or unfit employee if (1) the employer knew, or in the exercise of ordinary care, should have known of the employee's unfitness before the occurrence; and (2) retaining the employee was a proximate

cause of the plaintiff's injuries." *Betty Y. v. Al-Hellou*, 98 Wn. App. 146, 148-49, 988 P.2d 1031 (1999).

To establish proximate cause, the plaintiff must show that the injured party was injured by some negligent or other wrongful act of the employee alleged to have been negligently hired or retained. *Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 43, 747 P.2d 1124 (1987). Specifically, the plaintiff must show that the employee's poor performance that was the proximate cause of plaintiff's injury was also the same type of poor performance that the employer was aware of. *Smith v. Sacred Heart Med. Ctr.*, 144 Wn. App. 537, 544, 184 P.3d 646 (2008); *See Anderson v. Soap Lake Sch. Dist.*, 191 Wn.2d 343, 360-61, 364, 423 P.3d 197 (2018).

B. ANALYSIS

*1. Lack of Factual Basis*

Crystal Mountain argues that even if we agree with Schiro's position that she can bring negligent hiring and negligent retention claims when Pope was acting within the scope of her employment, we should still affirm the trial court's dismissal of the two claims because Schiro failed to provide any evidence for those claims. CR 50; *McDaniel v. City of Seattle*, 65 Wn. App. 360, 369, 828 P.2d 81 (1992) (explaining an appellate court can affirm the trial court's dismissal of a plaintiff's claim made on an erroneous legal conclusion, if we can affirm the dismissal on another ground that is established by the pleadings and supported by the proof).

Schiro responds that there was sufficient evidence to support the negligent hiring and retention claims and that the improperly excluded evidence would have also supported her contention that Pope was an unfit employee.

We hold that even if the trial court had admitted more evidence of Pope's alleged rudeness, beyond the substantial evidence Schiro was permitted to introduce on that fact, Schiro still failed to present sufficient evidence to sustain the negligent hiring and retention claims. Thus, the trial court properly granted the motion for judgment as a matter of law dismissing Schiro's claims.

None of the evidence Schiro points to as supporting her claim, both admitted and unadmitted, demonstrate that Crystal Mountain knew or, in the exercise of ordinary care, should have known of Pope's unfitness to be a lift operator at the time of hiring or at the time of accident. *Rucshner*, 149 Wn. App. at 680; *Betty Y.*, 98 Wn. App. at 148-49. Schiro needed to demonstrate that Pope had a history of being an unfit or incompetent employee and that same poor performance was the proximate cause of Schiro's injury. *Smith*, 144 Wn. App. at 544; *See Anderson*, 191 Wn.2d at 360-61. But Schiro failed to put forth any evidence that, prior to the incident, Pope ever denied a customer a lift or refused to help a customer, or was an otherwise unfit or incompetent employee.

Schiro spent significant portions of the trial below and now on appeal arguing that Pope was an unfit employee because she was rude and carefree in her job. Schiro also successfully introduced evidence that she had two roommates that thought she was unpleasant and difficult to live with. But this evidence has no bearing on her ability to operate a ski lift, and no bearing on whether she declined to provide a download to a customer. Furthermore, her roommates' opinions bore little probative value on how Pope interacted in a professional setting with guests. Moreover, much of the evidence of Pope's purported rudeness at work relied on incidents that occurred *after* Schiro's injury. Finally, even if Schiro could establish that Pope had a history of being rude to customers or not taking her job seriously prior to the accident, Schiro based her negligence claims

on Pope's refusal to help Schiro with a download, not Pope's rudeness or that Pope was not serious enough for her position.

Accordingly, judgment as a matter of law was proper because Schiro failed to provide sufficient factual support for her negligent hiring or negligent retention claims.

*2. Harmless Error*

Even if the court erred in dismissing the claims, it was a harmless error because the jury found Pope's version of what occurred at the ski lift to be credible. *See Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 311, 898 P.2d 284 (1995) (noting an error is harmless if it is trivial, or formal, or merely academic, and it did not prejudice the substantial rights of the party who assigned it, and *in no way affected the case's final outcome*).

Both the general negligence claim and the negligent hiring and negligent retention claims were entirely dependent on whether Pope refused to provide Schiro a lift down the mountain. Crystal Mountain never disputed that Pope had a duty of reasonable care in interacting with Schiro, it only disputed what occurred at the top of the lift. The jury was advised, in jury instruction 1, that the negligent act in this case was Pope's alleged denial of Schiro's request for a download. The jury, by finding that Pope did not breach her duty of reasonable care, necessarily found Pope's version of the event credible. We are not permitted to reweigh the evidence or disturb the jury's finding as to a witness's credibility. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009).

Absent a finding in Schiro's favor on this threshold factual question, Schiro could not have established the elements of her negligent hiring and retention claims. Hiring or retaining an unfit employee, coupled with a guest being injured at your business, would not render an employer

liable unless the negligently hired or retained employee committed a negligent act or omission that proximately caused the guest's injury. *Anderson*, 191 Wn.2d at 361, 364; *Smith*, 144 Wn. App. at 544. Here, on the threshold question of whether Pope denied Schiro the download, the jury believed Pope and did not believe Schiro.

Accordingly, we hold that even if the court erred in dismissing the negligent hiring and retention claims, it was a harmless error that did not prejudice Schiro's substantial rights and did not, in anyway, impact the final outcome of the case. *Mackay*, 127 Wn.2d at 311.[2]

## II. EVIDENTIARY RULINGS

Schiro argues that the trial court's "restrictive evidentiary rulings" denied her a fair trial because the rulings excluded evidence that would have allowed Schiro to prove her negligent

---

[2] Schiro also asks this court to conclude that vicarious liability claims and negligent hiring and retention claims can apply simultaneously in a case such as this one where the employer agrees that the alleged tortious act (if it occurred) was done within the scope of employment and definitely liable if such a tortious act occurred. Because we affirm the trial court's dismissal of Schiro's claims for negligent hiring and retention on an alternative basis, we decline to consider this argument. However, we question the purpose of allowing a negligent hiring or retention claim to go forward when the employer concedes any alleged act was within the scope of the employment because this creates essentially duplicative claims. *Hurley v. Port Blakely Tree Farms L.P.*, 182 Wn. App. 753, 769-70, 332 P.3d 469 (2014) (" 'A single claim for relief, on one set of facts, is not converted into multiple claims, by the assertion of various legal theories.' ") (quoting *Pepper v. J.J. Welcome Const. Co.*, 73 Wn. App. 523, 546, 871 P.2d 601 (1994), *abrogated on other grounds by Phillips v. King County*, 87 Wn. App. 468, 943 P.2d 306 (1997)); *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 865-66, 991 P.2d 1182 (2000) (noting when a plaintiff asserts two theories of recovery and the plaintiff relies on the same facts to prove both claims, the claims are duplicative and one claim must be dismissed). Schiro failed, both in her briefing to this court and in oral argument, to provide an example of when an employer might be liable under a negligent hiring or retention claim but not a vicarious liability claim, even when the employer has admitted the employee was acting within the scope of employment At oral argument, Schiro instead provided us an example of when a vicarious liability claim might fail but a negligent *supervision* claim would not. Given that a negligent supervision claim is not before us on appeal and our supreme court has already held that negligent supervision claims are not applicable when the employee is acting within the scope of employment, we do not find this example to be illuminating. *Anderson*, 191 Wn.2d at 361.

hiring and retention claims by showing that Pope was not a good employee. Br. of Appellant at 51. The evidence generally tended to show that Pope may have been rude, had received customer complaints about her disposition *after* Schiro's accident, was playful in her job, was disliked by two dormitory roommates, may have engaged in underage drinking and drug use while not at work, and was accused of stealing an item of property from a roommate. Schiro also sought to admit a YouTube video of Pope performing in a music band to counter her demeanor at trial, in which she was soft-spoken. This video, Schiro contends, would have shown that Pope is an extrovert.[3]

We hold that the trial court did not abuse its discretion when making its evidentiary rulings.

A. LEGAL PRINCIPLES

*1. Standard of Review*

An appellate court reviews a trial court's evidentiary rulings for an abuse of discretion. *Gilmore v. Jefferson County Pub. Transp. Benefit Area*, 190 Wn.2d 483, 494, 415 P.3d 212 (2018). Discretion is abused when the trial court's ruling is manifestly unreasonable or based on untenable grounds. *Id.* A trial court's decision is unreasonable or untenable when the court applies the wrong legal standard or its reasons are unsupported by the record. *Id.* We will not disturb a trial court's evidentiary rulings unless we are "convinced that '*no reasonable person* would take the view adopted by the trial court.' " *Id.* (alteration in the original) (internal quotation marks omitted) (quoting *State v. Salgado-Mendoza*, 189 Wn.2d 420, 427, 403 P.3d 45 (2017)).

---

[3] Schiro does not advise us how evidence that Pope is an extrovert is germane to whether Pope denied Schiro a chairlift download.

*2. Rules of Evidence*

Under ER 401, "Relevant evidence" is any evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence that is not relevant is not admissible. ER 402.

Under ER 404(b), "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, it may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b).

Generally, evidence of a person's character trait is not admissible to prove action in conformity therewith on a particular occasion. ER 404(a). As Professor Tegland notes, however, character evidence may be admissible in a civil case where a person's character is in issue under the pleadings or applicable law. 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 405.5, at 12-22 (6th ed. 2016). Schiro cites several cases to support her argument that character of the employee is relevant in claims alleging negligent hiring and retention. *See, e.g.*, *Simon v. Hamilton Logging Co.*, 76 Wash. 370, 136 P. 361 (1913); *Green v. Western Am. Co.*, 30 Wash. 87, 70 P. 310 (1902); *Snow v. Whitney Fidalgo Seafoods, Inc.*, 38 Wn. App. 220, 227-29, 686 P.2d 1090 (1984).

B. ANALYSIS

It is important to clarify the scope of Schiro's argument. Schiro's argument centers almost exclusively on evidence of Pope's character as being relevant to the negligent hiring and retention claims. But as we note above, the negligent hiring and retention claims hinge on what occurred at

the top of the mountain and the jury accepted Pope's version of events that she did not deny Schiro a download and thus found Crystal Mountain not negligent. As such, any error by the trial court in declining to admit this evidence was harmless because it concerned matters beyond the threshold question that the jury found in favor of Crystal Mountain. Error is harmless when the outcome of the trial was not materially affected by the error. *City of Seattle v. Pearson*, 192 Wn. App. 802, 817, 369 P.3d 194 (2016). To the extent this evidence was relevant only to dismissed claims, the exclusion of this evidence could not have affected the outcome of the jury's decision on the general negligence claim.

Schiro also briefly contends that this evidence was admissible on the question of Pope's credibility as a witness at trial. But Schiro points us to no authority, as it pertains to each piece of excluded evidence, showing that the evidence was admissible on the question of Pope's credibility as a witness. Schiro, in conclusory fashion, contends that Crystal Mountain " 'opened the door' " by asserting that Pope was a " 'good' employee." Br. of Appellant at 48, 52. But Schiro provides us with no legal authority through which we can evaluate this claim. She cites no rule of evidence anywhere in her argument, and cites no case that would guide our analysis of whether the door was actually opened, and, if so, whether the evidence Schiro sought to admit would have been admissible as a result. *See, e.g.*, *State v. Rushworth*, 12 Wn. App. 2d 466, 473-74, 458 P.3d 1192 (2020) (recognizing that the open door doctrine is an expanded theory of relevance, but "[t]he fact that an ordinarily forbidden topic has gained increased relevance does not result in automatic admission of evidence. Relevance is only one test for admissibility. Evidence is still subject to possible exclusion based on constitutional requirements, pertinent statutes, and the rules of evidence. ER 402.").

In short, Schiro fails to support this argument with adequate briefing and citation to authority. RAP 10.3(a)(6). Accordingly, we cannot consider Schiro's argument that this evidence should have been admissible on the question of Pope's credibility. And because the only manner in which the exclusion of this evidence is germane to the jury's verdict on the general negligence claim is if it bore upon her credibility as a witness, we will not disturb the jury's verdict on the question of Crystal Mountain's negligence.[4]

Schiro's argument that the trial court abused its discretion in excluding certain evidence is unpersuasive. We find no abuse of discretion.

### III. MISCONDUCT

Schiro argues that the trial court erred in not granting her a new trial for misconduct after Dr. Harris violated the trial court's pretrial orders.

We disagree.

#### A. LEGAL PRINCIPLES

Under CR 59(a)(2), a trial court may vacate a verdict and grant a new trial if the prevailing party's misconduct materially affected the substantial rights of the losing party. A party moving for a new trial based on misconduct "must establish that (1) the conduct was misconduct, (2) the misconduct was prejudicial, (3) the misconduct was objected to at trial, and (4) the misconduct

---

[4] Moreover, any error by the trial court was harmless because Schiro *did*, in fact, successfully introduce a substantial amount of evidence that she complains was excluded. Specifically, the jury heard that Pope's roommates thought she was an unpleasant person; they also heard that her roommates requested a room change. The jury also heard that Pope had a negative interaction with a guest a couple months prior to Schiro's accident. Finally, the jury heard arguably irrelevant evidence about the three customer complaints that were lodged *after* Schiro's accident, alleging Pope was rude; one of the complaints was even read aloud in court.

was not cured by the trial court's instructions." *Spencer v. Badgley Mullins Turner, PLLC*, 6 Wn. App. 2d 762, 790, 432 P.3d 821 (2018).

We review a trial court's denial of motions for mistrial and new trial for abuse of discretion. *Smith v. Orthopedics Int'l, Ltd., P.S.*, 149 Wn. App. 337, 341, 203 P.3d 1066 (2009), *aff'd*, 170 Wn.2d 659, 244 P.3d 939 (2010). When an appellate court reviews the trial court's decision, "we consider whether 'such a feeling of prejudice [has] been engendered or located in the minds of the jury as to prevent a litigant from having a fair trial.' " *Spencer*, 6 Wn. App. 2d at 790 (alteration in original) (internal quotation marks omitted) (quoting *Aluminum Co. of Am. v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 537, 998 P.2d 856 (2000)).

B. ANALYSIS

*1. Dr. Harris' " 'on average' " Testimony*

Schiro argues that Dr. Harris presented " 'on average' " testimony regarding degenerative conditions that had been prohibited by the trial court. Br. of Appellant at 55.

But Schiro fails to show how these statements impacted the jury's verdict, necessitating a new trial. Dr. Harris' testimony concerned Schiro's injury, and was thus related solely to damages. Dr. Harris' testimony did not concern the threshold question of whether Crystal Mountain was negligent. Because the jury found that Crystal Mountain had not breached its duty of ordinary care to Schiro, the jury never reached the question of damages.

Moreover, despite claiming that this testimony was a violation of the pretrial order prohibiting any testimony regarding averages, Schiro only objected to Dr. Harris' mention of chondromalacia. The court sustained the objection, and after Dr. Harris finished testifying the court

offered Schiro a limiting instruction that Schiro declined. Schiro made the strategic decision to not have a limiting instruction, indicating she did not believe the comments were overly prejudicial.

We hold that Schiro has not demonstrated prejudice as a result of Dr. Harris' "on average" testimony, or that the trial court erred in declining to grant a new trial on this basis.

*2. Dr. Harris' Reference to an Unrelated Lawsuit*

Schiro also argues that Dr. Harris' nonresponsive answer that he had reviewed a letter by Schiro's physician to Schiro's attorney regarding another lawsuit was highly prejudicial because the jury might speculate that she had been injured in a previous accident and the jury might infer from that statement that Schiro was overly litigious.

Even if Schiro could establish misconduct, Schiro fails to show that the trial court abused its discretion when it declined to order a new trial.

First, it should be noted that Schiro fails to show that Dr. Harris violated a pretrial order when testifying about Schiro's physician's letter. The doctor only stated "there was a typewritten letter from November 2014. I think it was actually written to you by Dr. Finkleman related to an unrelated lawsuit." 22 VRP at 2294. Dr. Harris did not testify what the lawsuit was about, whether Schiro had been injured, or if Schiro was even the plaintiff in that unrelated lawsuit. Although there was an order in limine regarding previous accidents, Schiro fails to identify where the court prohibited references to other lawsuits.

Furthermore, Schiro fails to persuade us that Dr. Harris' brief comment regarding this letter necessitates a new trial. Dr. Harris did not state or indicate that this letter pertained to a separate accident. Dr. Harris likewise did not testify about the merits of the lawsuit or indicate when the lawsuit occurred. Although Schiro suggests that Dr. Harris' brief reference to a lawsuit about

19

which no details were provided to the jury must have impacted the jury's verdict on the threshold question of Crystal Mountain's negligence, she offers nothing but speculation. Crystal Mountain, it must be noted, did not dispute that Schiro was injured as a result of her fall on the Gold Hills run. To the extent Dr. Harris's testimony implied the existence of a pre-existing injury, such an implication would only impact the jury's determination of damages, which they did not reach because they answered the threshold question of whether Pope refused Schiro's request for a download in the negative.

On balance, this was a minor blip in a trial that lasted almost a month. We are not persuaded that the jury would have concluded that Crystal Mountain breached its duty of care to Schiro had Dr. Harris not made this brief remark. *See Hoskins* v. *Reich*, 142 Wn. App. 557, 570, 174 P.3d 1250 (2008) (the improper admission of evidence is harmless if the evidence is insignificant compared to the evidence as a whole).

We hold that the trial court did not abuse its discretion when it declined to grant Schiro a new trial.[5]

## IV. SANCTIONS

Schiro argues the trial court abused its discretion when it did not sanction Crystal Mountain's attorneys.

We decline to consider this claim. Schiro generally states that the trial court abused its discretion by failing to award sanctions for Crystal Mountain "[r]epeatedly [f]ailing" to prepare for CR 30(b)(6) depositions and that the trial court abused its discretion when it did "not award

---

[5] Schiro also makes a passing suggestion that the trial court erred in declining to grant her motion for a mistrial. Schiro fails to make a distinct argument related to this assertion. Therefore, we decline to review this claim. RAP 10.3(a)(6).

the fees and costs attributable to the failed CR 30(b)(6) depositions." Br. of Appellant at 57, 59 (emphasis omitted). But Schiro does not point us to a final decision by the trial court on the issue of sanctions. If Schiro's complaint is related to the trial court's initial decision on her motion, she ignores that she sought reconsideration of this decision and the trial court effectively granted reconsideration. The trial court left open the issue of sanctions, instructing Schiro to renew her motion at the completion of the case if the additional depositions yielded additional information that should have been disclosed earlier in the discovery process. According to our record, Schiro did not renew this motion.

We decline to consider this issue because Schiro fails to advise us of the final decision of the trial court of which she seeks review.[6]

CONCLUSION

We hold that the trial court did not err in dismissing Schiro's negligent hiring and retention claims, and did not abuse its discretion in making the challenged evidentiary decisions. Additionally, we hold that the trial court did not abuse its discretion in denying Schiro's motion for a new trial, and we decline to consider Schiro's assignment of error related to her motion for discovery sanctions below. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

---

[6] *See generally* RAP 2.2 (outlining the decisions of the superior court which may be reviewed).

21

No. 54768-6-II

CRUSER, J.

We concur:

GLASGOW, A.C.J.

VELJACIC, J.

22